## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ADAM DANIEL SHEPHERD,

       Petitioner,

v.                                    Case No: 8:13-cv-1983-T-30AEP

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS and
ATTORNEY GENERAL, STATE OF
FLORIDA,

       Respondents.

_____

## ORDER

THIS CAUSE comes before the Court upon the petition of Adam Daniel Shepherd

(Dkt. #1) for habeas corpus relief under 28 U.S.C. § 2254, Respondent's response (Dkt.

#10), and Shepherd's reply (Dkt. #16).   Upon review, the Court concludes that the petition

should be denied.

## Procedural Background

Shepherd was arrested for acts occurring on February 14, 2009, and was charged by

Amended Information as follows:

| | |
|---|---|
| Count One: | Use of an electronic device to lure a child, |
| Count Two: | Travelling to meet a minor, |
| Count Three: | Aggravated battery of a law enforcement officer with a deadly weapon, |
| Count Four: | Aggravated battery of a law enforcement officer with a deadly weapon, |
| Count Five: | Aggravated battery of a law enforcement officer with a deadly weapon, |

| Count Six: | Aggravated battery of a law enforcement officer with a deadly weapon, |
|---|---|
| Count Seven: | Aggravated fleeing or attempting to elude, |
| Count Eight: | Aggravated assault of a law enforcement officer, |
| Count Nine: | Aggravated battery with a deadly weapon, and |
| Count Ten: | Leaving the scene of an accident. |

The state filed a Notice of Intent to Offer Evidence of Other Crimes, Wrongs or Acts.

Appx. A).

Defense counsel filed a motion to dismiss the aggravated battery of a law enforcement officer charges and a motion to strike the state's Notice of Intent.   The motions were heard by the trial court and denied on October 9, 2009.

On October 14, 2010, Shepherd entered a plea of guilty to Counts One, Two, Three, Four, Seven, Eight, Nine and Ten and the state entered a *nolle prosequi* on Counts Five and Six.   The parties agreed on a negotiated sentence of twenty years' incarceration followed by fifteen years sex offender probation.   Petitioner did not file a direct appeal of his sentence.

On June 26, 2011, Petitioner filed a Florida Rule of Criminal Procedure 3.800 Motion to Correct Illegal Sentence contending that he should not have been given sex offender probation for non-qualifying offenses on Counts Three and Four.   He also argued that his sentence was improperly reclassified based on an unconstitutional statute and that his twenty year sentence was illegal because it was imposed above the guidelines without a jury finding.   The motion was granted in part in that the sex offender probation was changed to regular probation.   The remainder of the motion was denied.   Shepherd

2

appealed, but the ruling was *per curiam* affirmed.   *Shepherd v. State*, 101 So. 3d 856 (Fla. 5th DCA 2012).

Shepherd then filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief raising two issues:

(1)     his plea was involuntary based on counsel's ineffectiveness because he failed to advise and move for dismissal based on subjective entrapment on Counts One and Two, and

(2) his plea was involuntary and counsel was ineffective for failure to advise that in order to prove aggravated battery on a law enforcement officer, the state had to prove that Petitioner knew it was a law enforcement officer.

Motion for Post-Conviction Relief, Appendix T.

The post-conviction court denied the motion with a written opinion.   *See* Appendix U.   Shepherd appealed.   The post-conviction court's order was affirmed.   *Shepherd v. State*, 112 So. 3d 110 (Fla. 5th DCA 2013).

Shepherd then timely filed his 28 U.S.C. § 2254 petition for writ of habeas corpus with this Court.   He raises four grounds for relief:

**Ground One:**     That Petitioner's constitutional right to the effective assistance of counsel was violated when his trial counsel failed to advise him of and move the trial court to dismiss Counts One and Two of the Amended Information based upon the viable and affirmative defense of entrapment.   That as a result of this failure, Petitioner's rights under the 5th, 6th and 14th Amendments of the United States Constitution have been violated.

**Ground Two**:     That Petitioner's constitutional right to the effective assistance of counsel was violated when his trial counsel failed to move the court to dismiss the counts found in Counts 3 and 4 of the Amended Information based upon video footage which would have concluded that the state would have been precluded from presenting a *prima facie* case that the crimes of battery on a law enforcement officer ever occurred.   That

Petitioner's constitutional right to the effective assistance of counsel was also violated when his trial counsel failed to advise the Petitioner to proceed to trial on these counts based upon the states inability to prove the elements of the crimes charged beyond a reasonable doubt.  That as a result of this failure, Petitioner's rights pursuant to the 5th, 6th and 14th Amendments of the United States Constitution have been violated.

**GROUND THREE:**       That the imposition of Petitioner's enhanced/reclassified sentences for two Counts of battery on a law enforcement officer was illegal in that Florida Statutes Section 784.07 was facially unconstitutional where it provides heightened and special treatment of police officers as victims of batteries, thereby violating his constitutional guarantee to equal protection of the law as guaranteed in the 14th Amendment of the United States Constitution.

**GROUND FOUR:** That Petitioner's sentence of (20) twenty overall years imprisonment, was extremely departive of the 10.26 year sanction factored on his Rule 3.992(A) criminal punishment code scoresheet, was improper without expressed reasoning presented to a jury for finding beyond a reasonable double and thereby illegal as such sentence was violative of his constitutional rights found under the 6th and 14th Amendments of the United States Constitution.

## Standard of Review

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 77 L.Ed.2d 1090 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S. Ct. 1910, 150 L.Ed.2d 9 (2001). A federal court may grant a § 2254 petition only if (1) the state decision was "contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  *See Price v. Vincent,* 538 U.S. 634, 638, 123 S. Ct. 1848, 155 L.Ed.2d 877 (2003); *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

The Eleventh Circuit Court of Appeals discussed the meaning  of the "contrary to" and "unreasonable application" clauses in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr*., 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Id. See also Yarborough v. Gentry*, 540 U.S. 1, 124 S. Ct. 1, 4, 157 L.Ed.2d 1 (2003). Moreover, under Section 2254(e)(1), a state court's factual findings shall be presumed correct, and the habeas petitioner can rebut the presumption of correctness only by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

The law regarding ineffective assistance of counsel claims is well settled.   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* at 694.

## Discussion

**Ground One:**      That Petitioner's constitutional right to the effective assistance of counsel was violated when his trial counsel failed to advise him of and move the trial court to dismiss Counts One and Two of the Amended Information based upon the viable and affirmative defense of entrapment.   That as a result of this failure, Petitioner's rights under the 5th, 6th and 14th Amendments of the United States Constitution have been violated.

Shepherd argues his trial counsel was ineffective for failing to move the trial court to dismiss the charges in Counts I and II based on the defense of subjective entrapment. He contends:

> … his counsel was ineffective during the plea process for failing to make him aware of this defense and that had he done so, he would not have entered into his plea but instead would have demanded that his counsel allow him to proceed to trial . . . Petitioner contended that even if the lower court did not find subjective entrapment as a matter of law and if this issue was presented to a jury, any reasonable jury would have reasonably determined that he was entrapped by Ms. Ramon, acting as an agent for the police department.

Petition (Dkt. #1), pp. 10-11.

The fallacy in this argument is that Ms. Ramon was a private citizen who reported him to the police after about six months of conversations with Shepherd.   Her version of the facts differs markedly from Shepherd's.   This difference requires that a motion to dismiss on the basis of entrapment would have failed as a matter of law in the state trial court and would have made it highly unlikely that a jury would have believed that Shepherd was entrapped.   Before she went to the police, both Ms. Ramon and her friend Henry

Piazzo heard Shepherd express his interest in having sex with children.   In her deposition,

Ms. Ramon explained:

> Q.     Okay.   So how did you first come into contact with Adam Shepherd?
>
> A.     On a single's chat line.
>
> Q.     All right.   And describe this singles' chat line for me.
>
> A.     It's just a - - it's chat line that they advertise on the TV.   If you want to talk to live singles and stuff, you know, you can call it.   And I go on there to talk to - - I'm single.   So I go on there and talk to guys and stuff.   And he kept hitting my ad.
>
> Q.     Okay.   So do you pay to post an ad on there?
>
> A.     No, it's free.
>
> Q.     It's free.
>
> A.     It's free for women and it costs men to pay for it.
>
> Q.     All right.   And how long were you - - what's the name of the chat line?
>
> A.     Quest.
>
> Q.     Do you remember when he - - well, do you remember what your ad said?
>
> A.     What my ad said?
>
> Q.     When he contacted it.
>
> A.     Yeah, pretty much.
>
> Q.     What did it say?
>
> A.     It says that I am single white female, 41-years old, that I look in my early 30's, 5'4, 130 pounds, got long hair, blue eyes; just described myself, said I'm looking to meet up.

Q.     All right.   And so he responded to that ad.   And what happens?
Does he call - - you call the number and there's like a code for your ad or
how does that work?

A.     Uh-huh.   Well, no.   When you get on there, you can talk live.   You
just go on there.   I don't know how the guys do it because I am not a guy.

Q.     Sure.

A.     I know when I go on there, I just connect live and there's all these
different guys that are on there talking live.   And usually there's so many
guys on there that I can't even listen to half the answers or anything.

       It's just one guy after another hitting my ad.   So I guess I talk
different than other girls on there.   Usually they're like, "Yo, yo, yo."   You
know, this and that.   But usually they hit my ad and he kept hitting my ad.

Q.     Okay.   All right.   And when did that start, do you recall?

A.     Like six months before.

Q.     So in the summer of '08, would you say?

A.     Uh-huh.

Q.     Maybe June, July, do you recall?

A.     I don't really remember the dates.

Q.     Okay.   All right.   And so you all would chat on this line?

A.     Uh-huh.

Q.     And then?

A.     I never chatted with him until later because he - - the way he answers
or tries to contact you is he says:   "Do you have kids?"

Q.     Okay.

A.     And I said - - so I wouldn't answer it, you know.   I was molested as
a child.   I knew exactly what he meant by that.   There's a lot of different

pedophiles and stuff on that line.   And when he asked me if I have kids, I'm like, "Why?"

Well, the very first time I did say, "Dude, why are you asking me if I got kids?"   And he said, "Because that's what I'm into."   And I wouldn't talk to him no more because of that.

Q.      So the very first time he responded to your ad, he said?

A.      "Do you have kids?"

Q.      Okay.   All right.   And that would have been last summer?

A.      Yeah.

Q.      In '08?

A.      Yeah.

Q.      And you just ignored him?

A.      He hit my ads three times after that, and I ignored him two of them. And then the last one, I answered him because I was with a guy friend of mine and I guess I felt braver and I was like, "You want to hear something?" I was like "Listen to this guy."

Q.      Who was your guy friend?

A.      His name's Henry.

Q.      What's his last name?

A.      It's Italian.   Piazzo, something like that, P-I-A-Z-Z-O.

Q.      Okay.   Does he live in Springhill?

A.      He lives in Tampa.

Q.      All right.   So you said, "Why are you asking?"

A.      "Why did you ask me if I had kids?"

Q.      And this is on this line?

A.    Chat line, yeah.

Q.    About when was that, do you know, in relation to the first two?

A.    That was probably in December, around December.

Q.    And he said, "That's what I'm into?"

A.    Yeah.

Q.    Then what happened?

A.    And I lied to him and told him that I had six- and nine-year-old little girls.   And he asked me if he could come and play with them.

Q.    Okay.   And so the conversation from the start was just about that?

A.    (Shaking head yes.)

Ramon deposition, pp. 4-8, attached as Exhibit to Order on Defendant's Motion for Post-

Conviction Relief, Appendix U.

The state post-conviction court properly analyzed and rejected this claim.   It said:

On this first claim of ground (1), that counsel was ineffective during the trial process, for failing to move to dismiss the charges based on the defense of subjective entrapment, the Defendant has not shown that counsel was ineffective, nor shown that he was prejudiced by the failure to move to dismiss the charges based on a subjective entrapment defense.

For counsel to have been ineffective the Defendant has to show that they would have prevailed in a motion to dismiss and that the two counts would have been dismissed.   In determining whether there has been subjective entrapment, under Florida Statute § 777.201, three questions must be answered.   *Munoz v. State*, 629 So. 2d 90, 99-100 (Fla. 1993).

I)    Whether an agent of the government induced the accused to commit the offense charged.

II)    Whether the accused was predisposed to commit the offense charged.

III)     Whether the entrapment evaluation should be submitted to a jury.

*Munoz v. State*, 629 So. 2d 90, 99-100 (Fla. 1993).

The first question must be answered in the affirmative before the other two questions are addressed. *State v. Henderson*, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007).  The burden, to show that there has been inducement by a government agent to commit the crime, is on the accused.  *Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993).  The inducement must be established by a preponderance of the evidence.  *Id.*  "Inducement includes 'persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship.'"  *State v. Henderson*, 955 So. 2d 1193, 1195 (Fla. 4th DCA 2007)(citing *Farley v. State*, 848 So. 2d 393, 395 (Fla. 4th DCA 2003)).

If the first question is answered affirmatively, the defendant initially has the burden to establish a lack of predisposition and once evidence has been produced to show no predisposition, the burden then shifts to the State to rebut the evidence beyond a reasonable doubt.  *Munoz v. State*, 629 So. 2d 90, 99 (Fla. 1993).  To rebut the evidence of the lack of predisposition, the State may make the appropriate inquiry into the conduct of the accused and present evidence of the accused's prior criminal history, even though such evidence would normally be inadmissible.  *Id.*  Admission of the evidence of predisposition is limited to the extent that it demonstrates predisposition on the part of the accused prior to and independent of the government acts.  *Id.*

If both the first and second questions are answered affirmatively, then the Court must decide whether the entrapment evaluation should be submitted to the jury pursuant to Florida Statute § 777.201.  *Id.*

In the instant case, the Defendant has not sufficiently shown that, had a motion to dismiss based on subjective entrapment been brought before the Court, the motion would have been successful.

The United States Supreme Court, in *Jacobson*, stated that "government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." *Jacobson v. U.S.*, 503 U.S. 540, 548, 112 S.Ct. 1535 (1992).  "When the Government's quest for convictions leads to the apprehension of an otherwise law-abiding citizen who, if left to his own devices, likely would have never run afoul of the law, the courts should intervene.  *Munoz v. State*,

629 So. 2d 90, 94 (Fla. 1993)(quoting *Jacobson v. U.S.*, 503 U.S. 540, 548, 112 S.Ct. 1535, 1542,43 (1992)).   Although the Defendant states that he was induced into the behavior with which he was charged, the Defendant appears to have approached the person who would eventually become the confidential informant (CI), Tina Ramon (TR).   This contact, between the Defendant and TR occurred well before TR actually contacted the police and began to work as a CI.   *Tr. Deposition of Tina Ramon* 6 – 11, October 7, 2009.   Thus, it does not appear that the Defendant's behavior was induced by the CI.

Even were there to be reason to think that government agents had induced the Defendant's behavior, the Defendant would have been unable to show that there was no predisposition, on his part, to commit the crimes with which he was charged.

At a motion hearing, on October 9, 2009, the Court discussed a notice filed by the State Attorney's Office (State) of intent to offer evidence of other crimes.   (See attached Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts).   The other crimes, wrongs or acts, by the Defendant, which the State intended to offer, concerned a matter in Duval county where the Defendant had attempted to use an online service, Quest, to attempt to receive consent from a parent of a child to consent to the participation of a child to commit an illegal act in violation of Florida Statute §§ 847.0135(3) and 847.0135(4).   (See attached Notice of Intent to Offer Evidence of Other Crimes, Wrongs, or Acts).   In that incident, the Defendant allegedly contacted a woman through the Quest service and told her he was interested in women with children.   *Tr. Mot. Hr'g* 10 – 11, October 9, 2009.   The woman allegedly spoke with him and at some point they arranged to meet and conduct a transaction where the Defendant would pay money to have sex with the woman's fictitious eight (8) year old niece.   (See attached Notice and *Tr. Mot. Hr'g* 10 – 11, October 9, 2009).   In that incident, as in the incident in Hernando County, the Defendant also offered, as a defense, that he was only there to have sex with the woman.   (See attached Notice).

The incident in Hernando County also started on the Quest service. *Tr. Deposition of Tina Ramon* 4-5, September 22, 2009.   In that incident TR was contacted by the Defendant on Quest and asked her if she had kids.   *Tr. Deposition of Tina Ramon* 6, September 22, 2009.   When TR eventually asked why he wanted to know if she had kids, the Defendant told her "Because that's what I'm into."   *Tr. Deposition of Tina Ramon* 6-7; 8-10 September 22, 2009.   Eventually, when the Defendant convinced TR to send a picture of one of her fictitious daughters, TR sent a picture of her six (6) year old niece.   *Tr. Deposition of Tina Ramon* 12, September 22, 2009.   The

Defendant and TR discussed the Defendant tying TR up and having her watch him play with her children. *Tr. Deposition of Tina Ramon* 12, September 22, 2009.

As the Defendant would not have been able to show that he was induced by the government agents into committing the criminal acts and also would have been unable to show that there was no pre-disposition on his part towards committing the criminal acts, the case would not have been subject to dismissal under a subjective entrapment defense. Thus, trial counsel's failure to file a motion to dismiss under the affirmative defense of subjective entrapment did not prejudice the Defendant and because the Defendant was not prejudiced, he did not meet the second prong under *Strickland*, of showing that he was prejudiced by an act or omission by trial counsel.

Order on Post-Conviction Motion, Appendix U.

This Court agrees with the state post-conviction court's conclusion that a motion to dismiss Counts One and Two on the grounds of entrapment would have failed both as a matter of law and before a jury. Therefore, it was not ineffective assistance of counsel for Shepherd's trial counsel not to file that motion. It is not ineffective assistance to decline to file a non-meritorious motion. Therefore, this ground will be denied.

**Ground Two**: That Petitioner's constitutional right to the effective assistance of counsel was violated when his trial counsel failed to move the court to dismiss the counts found in Counts 3 and 4 of the Amended Information based upon video footage which would have concluded that the state would have been precluded from presenting a *prima facie* case that the crimes of battery on a law enforcement officer ever occurred. That Petitioner's constitutional right to the effective assistance of counsel was also violated when his trial counsel failed to advise the Petitioner to proceed to trial on these counts based upon the State's inability to prove the elements of the crimes charged beyond a reasonable doubt. That as a result of this failure, Petitioner's rights pursuant to the 5th, 6th and 14th Amendments of the United States Constitution have been violated.

This same ground was raised in Shepherd's motion for post-conviction relief. Shepherd now acknowledges in his petition that he was factually mistaken when he claimed

his lawyer did not file a motion to dismiss Counts Three and Four.   His counsel did in fact file such a motion, but lost.

Shepherd contends the post-conviction court denied the motion because it "adopted the traverse submitted by the state in opposition and denied the motion to dismiss by concluding that the Petitioner had knowledge of law enforcement's involvement." Petition (Dkt. #1), p. 14.   While the trial court did deny the motion to dismiss, it did not "adopt" the state's traverse.   The motion requested dismissal as a matter of law.   The state filed a traverse to establish that it had evidence that would make the issue a jury question. In denying the motion, the trial court stated:

> THE COURT:        Well, I don't know that that is the crux of it.   In their paragraph four, they say, "There are additional facts relevant to the charged offenses."   And then in five, it says, "State has additional evidence to establish defendant did not begin to back out of the driveway until he realized that law enforcement was approaching."

> It sounds like that's the crux of their traverse which would forego a hearing based upon those allegations.

> MS. HERNDON:     Yes, Sir.

> THE COURT:        I understand the issue about there was a marked car following it.   That would be something that may be, you know, a circumstance.   But they're saying, "The totality of the circumstances support defendant's knowledge of law enforcement involvement" in paragraph nine.

> And they dispute the term "'car accident,' and intend to present evidence at trial sufficient to prove four counts," which would have to have the element of knowledge obviously.

> So at this time with the traverse, I'm going to have to deny your motion.

Transcript of motion hearing, Appendix F, pp. 5-6. The post-conviction court correctly ruled that there was a factual dispute that had to go to the jury. It was then Shepherd's decision whether to risk going to trial.

Shepherd also argues that his lawyer was ineffective for not arguing that the video itself would show that he did not cause the collision with the law enforcement officer's vehicle, but that the law enforcement vehicle ran into him. But a review of the court's ruling above indicates that the State was prepared to put on evidence "to establish Defendant did not begin to back out of the driveway until he realized that law enforcement was approaching." That language would have prevented the state trial court from granting the motion to dismiss as a matter of law on which vehicle caused the collision. It was a jury question.

Shepherd knew what the video showed and he acknowledged during his plea colloquy that it was his decision whether to go to trial. At the change of plea hearing, the following colloquy, in pertinent part, took place:

> THE COURT: So you understand that you have the right to have a trial before a judge or a jury and you have the right to have all the rights on this form at that trial, such as the right to have your attorney, Mr. Fleming, represent you at that trial;
>
> the right to continue with your not guilties;
>
> the right to confront and cross-examine witnesses against you;
>
> the right to have the State prove each and every allegation of the charges against you beyond and to the exclusion of every reasonable doubt.
>
> That you have the right to call witnesses of your own. If they won't come voluntarily, you can have them subpoenaed by the Court to make them come.

You have the right to testify at your trial and tell your side.   You also have the right to remain silent, not incriminate yourself and have that not held against you.

You have the right to appeal any errors that you believe occurred at the trial.

Those are the kind of rights we're talking about that are on this form that you read, initialed and signed, right?   Do you understand that?

THE DEFENDANT:       Yes, Sir.

THE COURT:       But you understand that by entering this plea today - - was this no contest?

MR. FLEMING:       Guilty.

THE COURT:       Guilty pleas - - pleas of guilty, that you're giving up or waiving your right to all the trial on each of the cases and all the rights that you would have at each of those trials.

THE DEFENDANT:       Yes, Sir.

THE COURT:       Do you understand there's not going to be any trials?   We're going to take care of everything right now.

THE DEFENDANT:       Yes, Sir.

* * * * *

THE COURT:       And you understand what it means to plead guilty?

THE DEFENDANT:       Yes, Sir.

THE COURT:       And do you understand the minimum and maximum sentence that you can receive in each of these charges?

THE DEFENDANT:       Yes, Sir.

THE COURT:       They're on the form that you read, initialed and signed and we went over them in open court.

And do you understand the sentence that you're going to receive that's on this form that you read, initialed and signed?

THE DEFENDANT:      Yes, Sir.

THE COURT:      Basically, you're going to receive – be adjudicated guilty on all the ones that you plead to; you're going to waive your presentence investigation.  You're going to receive 20 years in the Department of Corrections, followed by 15 years of sex offender probation with standard conditions on all those cases that allow that length of a sentence.

And there will be - - that probation will be consecutive to the State prison sentence.  And then there are many different conditions to that probation; I'm not going to go over them at this time.   But you've read this document and you understand all the conditions that will be attached to the probation?

THE DEFENDANT:      Yes, Sir.

THE COURT:      And do you believe that these pleas are in your best interest, these pleas of guilty, rather than to go to trial on these charges?

THE DEFENDANT:      Yes, Sir.

Transcript of change of plea hearing, Appendix G, pp. 8-15.

The state post-conviction court found that Shepherd's claim that he would have gone to trial on the issue of which vehicle caused the collision was not credible because Shepherd bargained for the specific term of incarceration he received and that term was well below the maximum term of the other Counts, without regard to Counts Three and Four.   The post-conviction court said:

Additionally, even if there was such an act or omission, the Defendant's claim that he would have taken the issue to trial is not credible. Again, as noted above, the Defendant received a sentence of twenty (20) years in the D.O.C. with fifteen (15) years of probation.   On counts three (3) and four (4), alone, the Defendant faced a possible maximum sentence of

sixty (60) years if he had taken the two counts to trial.  That does not take into account the other possible sentences of one hundred and twenty-five (125) years and sixty (60) days that might have resulted from the Defendant's other charges.  Furthermore, the Defendant's plea colloquy with the Court was thorough, indicating his understanding of the charges and the possible maximums and the rights that he was giving up, including the right to trial and the right to have the State prove every count against him beyond a reasonable doubt.  (See attached *Tr. Change of Plea* 6 – 10, October 14, 2010).  Examining the totality of the circumstances, the Defendant's claim that he did not know of the possible defense to the counts of aggravated battery of a law enforcement officer with a deadly weapon, is incredible, as is the Defendant's claim that he would have taken the issue to trial, in light of possibly sentencing risks and the thorough plea colloquy between the Court and the Defendant.

Order on Defendant's Motion for Post-Conviction Relief, Appendix U, Ground Two.

In sum, Shepherd is mistaken in claiming that his counsel failed to file a motion to dismiss on the grounds that the state could not prove aggravated battery on a law enforcement officer in Counts Three and Four.   His lawyer did file such a motion, but lost.  Shepherd's claim that his lawyer did not advise him that he could go to trial and show the video to the jury and that no jury would have convicted him after seeing the video is not credible.   The post-conviction court did not unreasonably apply federal law in denying this claim.   Therefore, Ground Two fails.

**GROUND THREE:**         That the imposition of Petitioner's enhanced/reclassified sentences for two Counts of battery on a law enforcement officer was illegal in that Florida Statutes Section 784.07 was facially unconstitutional where it provides heightened and special treatment of police officers as victims of batteries, thereby violating his constitutional guarantee to equal protection of the law as guaranteed in the 14th Amendment of the United States Constitution.

In Ground Three, Shepherd argues that Florida Statute 784.07 is unconstitutional because it provides greater penalties for battery on a law enforcement officer than it does for an ordinary citizen.   In response, the Respondent correctly points out that this argument

has been rejected by the Florida Supreme Court in *Soverino v. State*, 356 So. 2d 269 (Fla. 1978).   In his reply, Shepherd "contends that the Florida Supreme Court has long since rescinded from its previous holdings in *Soverino*…."   Reply (Dkt. #16), p. 13.   But the cases Shepherd cites in support are inapplicable.   In none of these cases does the Florida Supreme Court recede from its holding in *Soverino*.   More importantly, Shepherd cites no federal constitutional law in support of his position.   And it is the federal constitution upon which this Court must focus.

It is not surprising that Shepherd could find no federal cases in support because there is a very similar federal statute protecting law enforcement officers, officials, and their families.   *See* 18 U.S.C. § 115.   This federal statute has not been held unconstitutional.

This claim lacks merit as a matter of law and will be denied.

**<u>GROUND FOUR:</u>**   That Petitioner's sentence of (20) twenty overall years imprisonment, was extremely departive of the 10.26 year sanction factored on his Rule 3.992(A) criminal punishment code scoresheet, was improper without expressed reasoning presented to a jury for finding beyond a reasonable double and thereby illegal as such sentence was violative of his constitutional rights found under the 6th and 14th Amendments of the United States Constitution.

In Ground Four, Shepherd argues that his sentence of twenty years' imprisonment is illegal because it exceeds the recommended scoresheet sentence of 10.2 years.   This issue concerns only state sentencing law, not a federal constitutional issue.   As such, this issue is not cognizable in a federal habeas petition.   *Carrizales v. Wainwright*, 699 F. 2d 1053, 1055 (11th Cir. 1983).   And, in any event, the sentence is not illegal.   The maximum sentence for the offenses of conviction was indicated on Petitioner's scoresheet as 125 years.

**<u>Conclusion</u>**

Because all of Shepherd's claims lack merit, the petition will be denied.

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL
IN FORMA PAUERIS DENIED**

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.   28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability.   *Id*.   "A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."   *Id*. at § 2253(c)(2).   To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)(quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Tampa, Florida, this 30th day of May, 2014.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2013\13-cv-1983 order 2254.docx